**LAW OFFICE OF STEWART KATZ**
STEWART KATZ, State Bar #127425
555 University Avenue, Suite 270
Sacramento, California 95825
Telephone: (916) 444-5678

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB WRIGHT, KHRYSTYNE WRIGHT and JONATHAN WRIGHT as Successors in Interest of DANIEL LEE WRIGHT (deceased); JACOB WRIGHT, Individually; KHRYSTYNE WRIGHT, Individually; and, JONATHAN WRIGHT, Individually, <br><br> Plaintiffs, <br><br> vs. <br><br> AMBER DUNNE; DR. JOHN PONDER; B. KERNAN; DR. SHELDON SUSKAUER; DR. PAULA NEWMAN; DR. SCOTT A. HEATLEY; DAVID SMILEY; WILLIAM K. LIZARRAGA; DOE 1; and DOE 2. <br><br> Defendants. | No. 2:15-cv-02671-TLN-CKD <br><br> **FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS AND STATE LAW** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs complain and allege as follows:

## JURISDICTION AND VENUE

1. This complaint seeks damages and attorneys' fees pursuant to Title 42 U.S.C. sections 1983 and 1988 for violations of decedent's and survivors' civil rights and violations of California State law. Jurisdiction is founded upon Title 28 U.S.C. sections 1331 and 1343. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

2. Plaintiffs' claims arose in the County of Amador, California. Venue lies in the Eastern District of California pursuant to 28 U.S.C. § 1291(b)(2).

1

**INTRODUCTION**

3. This action arises out of the preventable suicide of Daniel Lee Wright ("Wright") at Mule Creek State Prison ("MCSP") on November 2, 2014. Wright had a known suicide risk with a history of prior near fatal suicide attempts. Wright had a documented need for psychotropic medications to combat his suicidal tendencies. Within three months prior to his death, Wright had torn his bedding and fashioned a ligature for the purpose of committing suicide. At the time of his death, despite not having taken his required medications for at least three days, Wright was not on suicide precautions and allowed to be unmonitored alone in his cell for at least two and a half hours during which time he committed suicide with a ligature fashioned from his bedding.

**PARTIES**

4. Born October 23, 1969, Daniel Lee Wright was a 45-year-old citizen of the United States at the time of his death.

5. Wright had three children, including plaintiffs Jacob Wright, Khrystyna Wright and Jonathan Wright. Plaintiffs Jacob Wright, Khrystyna Wright and Jonathan Wright are Wright's next of kin and successors in interest. See Exhibit A, Declaration by Persons Bringing this Action as Decedent's Successors in Interest.

6. California Department of Corrections and Rehabilitation Correctional Counselor B. Kernan was at all times mentioned herein a correctional counselor working at MCSP. Kernan was acting under color of state law.

7. California Department of Corrections and Rehabilitation Mental Health Clinician Amber Dunne was at all times mentioned herein an unlicensed trainee working at MCSP.  Dunne was acting under color of state law.

8. California Department of Corrections and Rehabilitation Staff Psychologist Dr. Newman, was at all times mentioned herein a doctor of psychology and a staff psychologist working at MCSP.  Dr. Newman was acting under color of state law.

9. California Department of Corrections and Rehabilitation Clinical Psychologist J. Ponder, Psy. D., was at all times mentioned herein a psychologist and/or mental health practitioner working at MCSP. Ponder was acting under color of state law.

10. California Department of Corrections and Staff Psychiatrist Sheldon Suskauer, M.D., was at all times mentioned herein a mental health practitioner working at MCSP. Dr. Suskauer was acting under color of state law.

11. California Department of Corrections correctional counselor B. Kernan was at all times mentioned herein a correctional counselor working at MCSP. Kernan was acting under color of state law.

12. On information and belief, Dr. Scott A. Heatley was at all times mentioned herein the Chief Medical Officer Executive (CME) at MCSP. Dr. Heatley was acting under color of state law. As CME, Dr. Heatley was responsible for overseeing the examination, diagnoses, prescriptions and treatment of all inmate patients at MCSP.

13. On information and belief, David Smiley was at all times mentioned herein the Chief Executive Officer (CEO) for health care at MCSP. CEO Smiley was acting under color of state law. The CEO is the highest-ranking health care authority within an adult CDCR institution. CEO Smiley was responsible for all aspects of delivering health care at MCSP to ensure adequate medical and mental health care for all inmates at MCSP.

14. On information and belief, William K. Lizarraga was at all times mentioned herein the Warden and CEO of MCSP. Warden Lizarraga was acting under color of state law. Warden Lizarraga was responsible for the custody and treatment of all inmates and for the training and discipline of all employees under his charge. Warden Lizarraga was also responsible for establishing such operational plans and procedures as required by MCSP to provide for the custody and treatment of inmates at MCSP.

15. Upon information and belief, Defendant Doe 1, the Sergeant on Duty at MCSP at or about 9 a.m. to 11:30 a.m. on November 2, 2014, was at all times mentioned herein a correctional sergeant working at MCSP who was acting under color of state law.

1  The true name and identity of defendant Doe 1, the Sergeant on Duty, is presently
2  unknown to Plaintiff. Plaintiff will seek to amend this complaint as soon as the true name
3  and identity of Doe 1 is ascertained.

4        16.    Upon information and belief, Defendant Doe 2, the Administrative
5  Officer-of-the-Day for MCSP on duty at or about 9 a.m. to 11:30 a.m. on November 2,
6  2014, was at all times mentioned herein an administrative officer working at MCSP who
7  was acting under color of state law. The true name and identity of defendant Doe 2, the
8  Administrative Officer-of-the-Day, is presently unknown to Plaintiff. Plaintiff will seek
9  to amend this complaint as soon as the true name and identity of Doe 2 is ascertained.

## COMPLIANCE WITH GOVERNMENT TORT CLAIM PROCEDURES

11        17.    As a pre-requisite to the state law claims alleged herein against State of
12  California employees/agents, Plaintiffs Jacob Wright, Khrystine Wright and Jonathan
13  Wright filed governmental claims with the Victims Compensation and Government
14  Claims Board on or about April 28, 2015.

15        18.    By correspondence from the California Victims Compensation and
16  Government Claims Board dated June 26, 2015 these claims were rejected.

17        19.    This action has been filed within six months of the rejection by the
18  California Victims Compensation and Government Claims Board rejection, as required
19  by law.

## FACTUAL ALLEGATIONS

21        20.    At the time of his death, Daniel Lee Wright, was a 45-year-old Caucasian
22  male housed at Mule Creek State Prison (MCSP). The end of his sentence for lewd and
23  lascivious conduct, while not imminent, was within distant view.

24        21.    Wright had three children, Plaintiffs Jacob Wright, Khrystine Wright and
25  Jonathan Wright.

26        22.    Wright had a long documented history of mental illness including being
27  diagnosed with severe depression and being bi-polar, which were well known to MCSP
28  correctional and medical and mental health staff.

4

23. Wright also had a history of multiple suicide attempts while in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Two of his documented three suicide attempts were described as "near lethal" events. In addition to the actions classified as attempts, Wright engaged in other self-harming acts and on multiple other occasions undertook concrete steps towards committing suicide. Wright almost always had suicidal ideation.

24. The problem of in-custody suicide has long been recognized as a serious mental health issue confronting prisons and jails. As a result a considerable body of widely disseminated knowledge regarding identifying those at greatest risk as well as preventative protocols have developed and are taught, discussed and addressed by mental health and correctional professionals throughout the nation.

25. Wright's unfortunate death comes at the heels of a long line of documented institutional failures by California's Correctional system in its treatment of mentally ill inmates, including many suicides, as set forth in the class action lawsuit *Coleman v. Brown*, No. CIV S 90-0520.

26. Wright exhibited many of the most significant suicide risk factors indicating suicidality including his history of attempted suicide, his age and ethnicity, the nature of his charges, his mental health issues, the seriousness and recentness of his attempts and his suicidal ideation.

27. Accepted and proven suicide prevention protocols include frequent observation by staff, not leaving the inmate alone in his cell, making sure the individual is medication compliant, that the person is competently treated and assessed, that they are issued tear-resistant clothing and bedding to prevent the fashioning of a ligature and that the cells not have points of attachment for ligatures.

28. Wright was prescribed a number of psychotropic medications that were necessary, and, according to the CDCR medical records, known to effectively help prevent Wright from attempting suicide.

29. At the time of his death, Wright was refusing to take his essential psychiatric medication for several days. Despite having knowledge of his refusal, custodial and medical staff failed to take measures to ensure that Wright was properly medicated. Wright had been involuntarily but successfully medicated numerous times in the past.

30. Exacerbating the inadequacy of Wright's care was that during this time of crisis preceding his death his primary mental health treatment provider was an unlicensed, unqualified and inadequately supervised trainee, defendant Dunne. On information and belief, defendant Dr. Newman was responsible for supervising defendant Dunne but failed to competently supervise defendant Dunne.

31. On or about August 10, 2014, Wright made a noose out of bed sheets. He was admitted to a Mental Health Crisis Bed and placed on suicide precautions.

32. On August 25, 2017, a suicide risk evaluation was conducted of Wright which estimated him to be at a low acute risk of suicide and a high chronic risk of suicide. Acute risk factors for suicide noted in the last three months included suicidal ideation, current/recent depressive episode(s), disturbance of mood/lability, recent bad news, loss or anniversary date, hopelessness/helplessness and increasing interpersonal isolation.

33. On September 9, 2014, Wright was assessed for purposes of determining his level of care and a mental health treatment plan. Pursuant to CDCR's mental health delivery system, this assessment was supposed to be undertaken by an interdisciplinary treatment team (IDTT) comprised of, at a minimum, the senior psychologist, assigned psychiatrist, "PSU" facility captain, correctional counselor, assigned primary clinician and the inmate-patient. The IDTT was responsible for determining Wright's individualized treatment plan.

34. The IDTT members participating in Wright's September 9, 2014 mental health treatment plan included defendant Ponder (senior psychologist), defendant Dunne (primary clinician) and B. Kernan (correctional counselor) and no other individuals.

35. On information and belief, defendant Dunne, the primary clinician in charge of Wright's mental health treatment plan, was supposed to be supervised by Dr. Newman. On information and belief, Dr. Newman failed to exercise any supervision over defendant Dunne in the preparation or execution of Wright's mental health treatment plan, even though Dr. Newman knew that such supervision was both crucial and legally required.

36. Notably absent from Wright's September 9, 2014 mental health treatment plan was a psychiatrist or any other physician's participation or approval, despite the fact that Wright was purportedly under the care of a psychiatrist and taking essential prescribed psychotropic medication. Without participation and approval by a physician, there could be no and there was no proper assessment of the role his medication was to play in his treatment. Without participation and approval by a physician, there could be no and there was no plan, or ability to implement a plan, to appropriately respond to a further increase in his acute suicide risk created by his refusal to take medications.

37. On information and belief, Defendant Dunne, the primary clinician in charge of Wright's September 9, 2014 mental health treatment plan, should have obtained but failed to obtain a psychiatrist's participation and/or approval. In the alternative, on information and belief, defendant Suskauer, the psychiatrist who had prescribed Wright's psychotropic medications, had a duty to review the September 9, 2014 mental health treatment plan for Wright, who was under his care, but negligently failed to do so.

38. The mental health treatment plan put into place for Wright on September 9, 2014, by defendants Ponder, Dunne and Kernan failed to address his known mental health needs. Even though (1) less than one month had passed since he was found to have made a ligature out of bed sheets, (2) he had known significant history of suicidal ideation, (3) he had multiple known previous suicide attempts, (4) he reported being "very depressed" and (5) it was obvious that he was still currently at risk of suicide, the mental health treatment plan put into place was to "monitor" Wright "for suicidal ideation and possible higher level of care." Given the known suicide risk factors, this plan

was woefully inadequate and defendants Ponder, Dunne and Kernan knew or should have known it was woefully adequate. Defendants Ponder, Dunne and Kernan approved the inadequate treatment plan despite knowing Wright's risk factors, including that he presented a current risk of suicide.

39. An adequate mental health treatment plan would have included, at a minimum, suicide precautions preventing his access to bedding that was not suicide resistant. The most common means by which inmates commit suicide is to tear bedding and fashion it into a ligature.

40. An adequate mental health treatment plan would have been approved by a psychiatrist or other physician and would have included a specific plan for monitoring whether Wright was medication compliant. An adequate mental health treatment plan would have specified that any refusal of psychotropic medication would trigger reassessment at the earliest opportunity of whether a higher level of care or any additional measures or precautions were needed.

41. On October 31, 2014 and November 1, 2014, Wright refused to take his essential, prescribed psychotropic medication. Because his mental health treatment plan did not include a specific plan for monitoring whether he was medication complaint, on information and belief, no one reported the fact that Wright had refused his medication even after the second consecutive day. In the alternative, if any of his mental health care providers or anyone on his mental health treatment team knew or should have known that he had refused his medication, then those individuals or providers negligently or deliberately failed to take necessary action to reassess or prompt reassessment of whether a higher level of care or any additional measures or precautions were needed.

42. On November 2, 2014, Wright again refused to take his essential, prescribed psychotropic medication. This was the third consecutive day he had done so. The same morning, in disregard of Wright's known suicide risk heightened by days of refusing his essential medication, staff allowed him to be alone in his cell with non-suicide resistant bedding and without any supervision or observation for over 2.5 hours

8

1  while the rest of the inmates were in the yard. During that time, he tore his bedding and
2  used it to fashion a ligature used to commit suicide in his cell.

3  43.  Wright's suicide resulted directly or substantially from the inadequate mental health treatment plan of September 9, 2014 that was approved by defendants Ponder, Dunne and Kernan and which was not approved by a psychiatrist. If an adequate mental health treatment plan including necessary suicide precautions and proper monitoring had been put into place on September 9, 2014 for Wright, then he would not have committed suicide after refusing essential, prescribed psychotropic medications for three days.

44.  The aforementioned acts and omissions of defendants caused decedent's damages, including but not limited to, physical pain and suffering, emotional distress, mental anguish and loss of his life. The aforementioned acts and omissions of defendants also caused plaintiff's individual damages, including but not limited to, loss of decedent's love, companionship, comfort, care, assistance, protection, affection, society and moral support, as well as emotional distress and mental anguish.

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**
**Deliberate Indifference to Serious Medical Needs, Health and Safety**
**(Violation of the Eighth Amendment to the U.S. Constitution:**
**Survival Action- 42 U.S.C. §1983)**
*(Against all Defendants)*

45.  On behalf of decedent Wright, Plaintiffs re-allege and incorporate by reference paragraphs 1 through 44, as though fully set forth herein.

46.  Defendants knew and were deliberately indifferent that decedent Wright was in danger of serious harm to his health and safety, including being at obvious risk of committing suicide, due to (1) his failure to be properly medicated, (2) his inadequate mental health treatment plan, (3) documentation in both his medical records and C-file noting his mental health illnesses and his high chronic risk of suicide and a high acute risk of suicide, and (4) the mental distress he displayed prior to time of his death.

47. The mental health and/or psychiatric symptoms that Defendants ignored were obvious and immediate threats to Wright's health and safety.

48. Despite knowing that Wright was in danger of serious harm to his health and safety, Defendants failed to provide him with necessary evaluation and treatment or failed to take action to provide him with necessary evaluation and treatment.

49. Defendants' acts and/or omissions as alleged herein, including but not limited to the failure to provide Wright with timely and adequate medical care, psychiatric care and/or take other measures to protect him from serious harm, constituted deliberate indifference to Wright's mental health and/or psychiatry needs.

50. As a direct and proximate result of Defendants' conduct, decedent Wright experienced the damages alleged herein, including but not limited to physical pain and suffering, emotional distress, mental anguish, and loss of his life.

51. The aforementioned acts and/or omissions of the individually named Defendants were malicious, reckless and/or accomplished with a conscious disregard of decedent's rights thereby entitling Plaintiffs to an award of exemplary and punitive damages according to proof to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**SECOND CAUSE OF ACTION**
**Supervisory Liability based on Customs, Practices or Policies**
**(Survival Action- 42 U.S.C. §1983)**
*(Against Dr. Heatley, CEO Smiley, Warden Lizarraga and Does 16-20)*

52. On behalf of decedent Wright, Plaintiffs re-allege and incorporate by reference paragraphs 1 through 51, as though fully set forth herein.

53. The aforementioned acts and/or omissions of Defendants in being deliberately indifferent to Wright's serious medical needs, health and safety and in violating decedent's civil rights were the direct and proximate result of customs, practices or policies, or the lack thereof, of Dr. Heatley, CEO Smiley, Warden Lizarraga and Does 16 through 20.

54. Such customs, practices, policies and/or procedures include, but are not limited to, an ongoing pattern of deliberate indifference to the serious medical needs and health and safety of MCSP inmates, including the following: a failure to ensure implementation of appropriate mental health and psychiatric treatment plans; a failure to act upon clearly life-threatening symptoms and reports and/or clear suicidal impulses or gestures; a failure to provide appropriate staffing and training at MCSP for providing inmates with adequate mental health or psychiatric treatment; a failure to implement a policy to ensure that staff would contact and summon emergency mental health and/or psychiatric treatment in a timely manner; a failure to create and/or implement guidelines that must be followed to remove inmates from existing suicide precautions; a failure to create, implement and/or ensure that staff follow policies; a failure to adequately train and supervise employees and/or agents to prevent the occurrence of the constitutional violations alleged herein; and a failure to promulgate appropriate policies or procedures or take other measures to prevent the constitutional violations alleged herein.

55. As a direct and proximate result of the aforementioned customs, practices, policies and/or procedures of said Defendants, or as a result of Defendants' failure to promulgate appropriate policies or procedures, Wright suffered the damages alleged herein, including but not limited to physical pain and suffering, emotional distress, mental anguish, and loss of his life.

### THIRD CAUSE OF ACTION
**Wrongful Death: Negligence/ Malpractice**
**(Survival Action – Cal. Code Civ. Proc. § 377.60 et seq.)**
*(Against defendants Ponder, Dunne, Kernan, Suskauer and Newman)*

56. On behalf of decedent Wright, Plaintiffs re-allege and incorporate by reference paragraphs 1 through 55, as though fully set forth herein.

57. Plaintiffs are the children of the decedent Wright, who has no surviving spouse.

58. The acts and/or omissions by as detailed herein directly and proximately caused the wrongful death of Wright and were the direct and proximate cause of

Plaintiffs' injuries entitling Plaintiffs to recover damages pursuant to Code of Civil Procedure section 377.60 et seq.

59. The mental health and/or psychiatric care rendered by the named medical staff as described herein, was, at a minimum, negligent and did not comply with professional standards of care for such treatment, proximately causing plaintiffs' injuries.

60. The acts and/or omissions by these defendants directly and proximately caused decedent Wright to suffer the damages alleged herein, including but not limited to physical pain and suffering, emotional distress, mental anguish, and loss of his life.

61. Said defendants breached that duty when they had actual and constructive knowledge that Wright was in obvious physical and/or in need of immediate medical care and yet said Defendants failed to timely respond and failed to take reasonable action to summon such care, as alleged herein, resulting in a violation of Cal. Govt. Code sections 844.6 and 845.6 and Wright's loss of life.

62. Said conduct was committed in the course and scope of said Defendants' employment.

63. As a direct and proximate cause of said Defendants' breach, decedent Wright suffered the damages alleged herein, including but not limited to physical pain and suffering, emotional distress, mental anguish, and loss of his life.

64. The actions by Defendants were willful, wanton, malicious and oppressive, thereby justifying an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future. Plaintiff seeks exemplary and punitive damages as appropriate.

**FOURTH CAUSE OF ACTION**
**Failure to Supervise, Investigate and Discipline**
**(Survival Action- 42 U.S.C. §1983)**
*(Against defendants Newman, Suskauer and Ponder)*

65. On behalf of decedent Wright, Plaintiffs re-allege and incorporate by reference paragraphs 1 through 64, as though fully set forth herein.

66.     The constitutional violations by Defendants as alleged herein occurred as a result of the failure of Defendants Heatley, CEO Smiley, Warden Lizarraga, Dr. Newman and Dr. Suskauer to adequately supervise, investigate and discipline employee conduct.

67.     Defendants Dr. Heatley, CEO Smiley, Warden Lizarraga and Does 1 and 2 failed to adequately supervise, investigate and discipline subordinate employees in regard to preventing deliberate indifference to the serious medical needs, health and safety of inmates at MCSP. Said defendants' failure to supervise, investigate and discipline employees amounted to deliberate indifference to inmates' right to be free of deliberate indifference to their mental health and/or psychiatric needs.

68.     As a direct and proximate result of the aforementioned failure to supervise, investigate and/or discipline, decedent Wright suffered the damages alleged herein, including but not limited to physical pain and suffering, emotional distress, mental anguish and loss of his life.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. For compensatory, general and special damages against each Defendant, jointly and severally, in the amount proven at trial;

2. For punitive and exemplary damages against each individually named Defendant in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

3. For costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and as otherwise authorized by statute or law;

4. For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

DATED: January 5, 2018                                     Respectfully submitted,


                                                           /s/ Stewart Katz
                                                           Stewart Katz,
                                                           Attorney for Plaintiff

13

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury.

Dated: January 5, 2018                             Respectfully submitted,

/s/ Stewart Katz
Stewart Katz,
Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

**LAW OFFICE OF STEWART KATZ**
STEWART KATZ, State Bar #127425
555 University Avenue, Suite 270
Sacramento, California 95825
Telephone: (916) 444-5678

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

**DECLARATION BY PERSONS BRINGING THIS ACTION AS DECEDENT'S SUCCESSORS IN INTEREST**

**Cal. Code Civ. Proc. § 377.32**

Pursuant to California Code of Civil Procedure section 377.32, Plaintiffs submit this declaration in support of bringing this action as decedent's successors in interest.

I, Jacob A. Wright, and I, Jonathan D. Wright, and I, Khrystyne A. Wright, declare as follows:

1. The claims in this action arise out of the death of the decedent, Daniel Lee Wright.

2. Decedent Daniel Lee Wright died on November 2, 2014, at Mule Creek State Prison in Ione, California, in the County of Amador.

3. No proceeding is now pending in California for administration of the decedent's estate.

4. There was no administration of the decedent's estate.

5. The declarants Jacob A. Wright, Jonathan D. Wright, and Khrystyne A. Wright are the children of decedent, Daniel Lee Wright, and are his next of kin. The declarants Jacob A. Wright, Jonathan D. Wright, and Khrystyne A. Wright are the

decedent's successors in interest as defined in section 377.11 of the California Code of Civil Procedure and succeed to the decedent's interest in this action.

      6. No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding.

      7. A certified copy of the decedent's death certificate is attached hereto.

I declare under penalty of perjury that the foregoing is true and correct of my own knowledge, and if called to do so, I could and would competently testify to the matters set forth herein. Executed this 21st day of December, 2015, at San Jose, California.

      /s/ Jacob A. Wright
      Jacob A. Wright, Declarant

I declare under penalty of perjury that the foregoing is true and correct of my own knowledge, and if called to do so, I could and would competently testify to the matters set forth herein. Executed this 21st day of December, 2015, at San Jose, California.

      /s/ Khrystyne A. Wright
      Khrystyne A. Wright, Declarant

I declare under penalty of perjury that the foregoing is true and correct of my own knowledge, and if called to do so, I could and would competently testify to the matters set forth herein. Executed this 23rd day of December, 2015, at Lake Butler, Florida.

      /s/ Jonathan D. Wright
      Jonathan D. Wright, Declarant

DATED: December 23, 2015      Respectfully submitted,

      /s/ Stewart Katz
      Stewart Katz