1

2

3

4

5

6                       UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF CALIFORNIA

7

8    JACOB WRIGHT, KHRYSTYNE              No.  2-15-cv-02671-TLN-CKD
     WRIGHT and JONATHAN WRIGHT, as
9    successors in interest of DANIEL LEE
     WRIGHT (deceased); JACOB WRIGHT,
10   individually; KHRYSTYNE WRIGHT,      **ORDER DENYING IN PART AND**
     individually; and JONATHAN WRIGHT,   **GRANTING IN PART WITH LEAVE TO**
11   individually,                        **AMEND DEFENDANTS' MOTION TO**
                                          **DISMISS AND MOTION FOR JUDGMENT**
12                 Plaintiffs,            **ON THE PLEADINGS.**

13        v.

14
     AMBER DUNNE; DR. JOHN PONDER;
15   DANA M. KERNAN; DR. SHELDON
     SUSKAUER; DR. PAULA NEWMAN;
16   DR. SCOTT A. HEATLEY; DAVID
     SMILEY; JOE A. LIZARRAGA; DOE 1;
17   AND DOE 2,

18                 Defendants.

19

20

21        This matter is before the Court on Defendants Dana M. Kernan ("Kernan") and Joe A.

22   Lizarraga's ("Lizarraga") Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC")

23   (ECF No. 33) under Federal Rule of Civil Procedure ("Rule") 12(b)(6) and Defendants Amber

24   Dunne ("Dunne"), Dr. John Ponder ("Ponder"), Dr. Sheldon Suskauer ("Suskauer"), Dr. Paula

25   Newman ("Newman"), Dr. Scott A. Heatley ("Heatley"), and David Smiley's ("Smiley") Motion

26   for Judgement on the Pleadings (ECF No.34) under Rule 12(c).  Defendants are employees of the

27   California Department of Corrections and Rehabilitation at Mule Creek State Prison ("MCSP").

28   (ECF Nos. 33 & 34.)  Plaintiffs Jacob Wright, Khrystyne Wright, and Jonathan Wright (together

                                          1

"Plaintiffs"), each in his or her individual capacity and collectively as successors in interest of decedent Daniel Lee Wright ("Decedent") filed an opposition to the motion to dismiss (ECF No. 35) and to the motion for judgment on the pleadings (ECF No. 36). Defendants filed corresponding replies in support of their respective motions. (ECF No. 38 and 39, respectively.)

For the reasons discussed below, the Court GRANTS in part and DENIES in part Defendants Kernan and Lizarraga's motion to dismiss and GRANTS in part and DENIES in part Defendants Dunne, Ponder, Suskauer, Newman, Heatley, and Smiley's motion for judgement on the pleadings.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Decedent was a state prisoner at MCSP and died as a result of suicide on November 2, 2014.  (ECF No. 27 at ¶ 3.)  Decedent's three children, his successors in interest, brought this lawsuit against several California Department of Corrections and Rehabilitation ("CDCR") employees for failing to prevent Decedent's suicide despite Decedent's history of suicide attempts and suicide risk.  (*Id.* at ¶ 5.)  Plaintiffs assert that Decedent attempted to hang himself in the three months prior to his death and that Decedent had not taken his prescribed medication for at least three days prior to his death.  (*Id.* at ¶ 3.)  Yet, according to Plaintiffs, no precautions were taken by Defendants to prevent Decedent's suicide and he was allowed to remain alone and unmonitored in his cell for at least two and a half hours on November 2, 2014, allowing him the opportunity to hang himself.  (*Id.*)  Decedent had a long-documented history of mental illness — including diagnoses of severe depression and bi-polar disorder and a history of multiple suicide attempts, self-harming behavior, and suicidal ideations — which was known to MCSP correctional, medical, and mental health staff.  (*Id.* at ¶ 22.)

Plaintiffs' SAC alleges Decedent's suicide resulted from Defendants' failure to implement "[a]ccepted and proven suicide prevention protocols" and failure to include a psychiatrist or physician in the development of Decedent's mental health treatment plan.  (*Id.* at ¶¶ 27, 36.) Plaintiffs claim the mental health treatment plan put in place for Decedent was inadequate given Decedent's known suicide risk factors and past suicide attempts.  (*Id.* at ¶¶ 27, 36–43, 52–55.)

///

Plaintiffs name the following defendants, alleged to be acting under color of state law:

(1) Kernan, a CDCR correctional counselor working at MCSP.  (ECF No. 27 at ¶ 6.)

(2) Dunne, a CDCR Mental Health Clinician and unlicensed trainee working at MCSP. Dunne is also asserted to be "the primary clinician in charge of [Decedent's] treatment plan." (ECF No. 27 at ¶¶ 7, 35.)

(3) Newman, a staff psychologist working at MCSP.  (ECF No. 27 at ¶ 8.)

(4) Ponder, a CDCR senior psychologist and/or mental health practitioner working at MCSP.  (ECF No. 27 at ¶¶ 9, 34.)

(5) Suskauer, a CDCR Staff Psychiatrist and mental health practitioner working at MCSP. (ECF No. 27 at ¶ 10.)

(6) Heatley, the Chief Medical Officer Executive ("CME") at MCSP.  (ECF No. 27 at ¶ 12.)

(7) Smiley, the Chief Executive Officer (CEO) for health care at MCSP.  (ECF No. 27 at ¶ 13.)

(8) Lizarraga, the Warden at MCSP.  (ECF No. 27 at ¶ 14.)

Plaintiffs claim Decedent's suicide resulted "directly or substantially" from an inadequate mental health treatment plan approved on September 9, 2014, by an interdisciplinary treatment team consisting of Ponder, Dunne, and Kernan.  (*Id.* at ¶ 33–43.)  Plaintiffs contend an adequate mental health treatment plan would have, at a minimum, included suicide precautions preventing access to bedding that was not suicide resistant.  (*Id.* at 39.)  On information and belief, Plaintiffs also assert that Dunne was supposed to be supervised by Newman but Newman failed to exercise such supervision.  (*Id.* at ¶ 35.)  Plaintiffs assert that the plan should have been, but was not, reviewed and approved by a psychiatrist or other physician, despite Decedent being under the care of a psychiatrist and taking prescribed psychotropic medication.  (*Id.* at ¶ 36.)  As such, there lacked a plan to monitor medication adherence and ability to respond to Decedent's increased suicide risk created by his refusal to take medications for three days prior to his death.  (*Id.* at ¶¶ 35–37, 40.)

///

A. Defendants Kernan and Lizarraga's' Motion to Dismiss

Kernan and Lizarraga seek to dismiss several causes of action against them for failure to state a claim under Rule 12(b)(6).  (ECF No. 33.)

Plaintiffs allege that Kernan, as part of the interdisciplinary treatment team with Dunne and Ponder, "knew or should have known" that the mental health treatment plan was "woefully inadequate" and assert two claims against her: (1) deliberate indifference to Decedent's serious medical needs, health, and safety (First Cause of Action); and (2) wrongful death/negligence (Third Cause of Action).  (ECF No. 27 at ¶¶ 45–51, 56–64.)  Defendants move to dismiss the First Cause of Action on the basis of qualified immunity and failure to state a claim upon which relief can be granted (ECF No. 33-1 at 12–17, 20–21) and to dismiss the Third Cause of Action on the basis that the SAC does not allege facts establishing Kernan owed any legal duty to the Decedent or that she breached that duty.  (*Id.*)

Plaintiffs allege that Lizarraga, as the Warden at MCSP, was responsible for the custody and treatment of inmates at MCSP and for training and discipline of all employees under his charge.  (ECF No. 27 at ¶ 14.)  Additionally, Lizarraga was responsible for establishing operational plans and procedures to provide for the custody and treatment of inmates at MCSP. (*Id.*)  Plaintiffs allege that Lizarraga, along with Heatley and Smiley, demonstrated an "ongoing pattern of deliberate indifference" in their failure to ensure implementation of appropriate mental health and psychiatric treatment plans; failure to act upon life-threatening symptoms and suicidal impulses or gestures; failure to provide appropriate staffing and training at MCSP for providing inmates with adequate mental health or psychiatric treatment; failure to implement a policy to ensure staff would contact and summon emergency mental health and/or psychiatric treatment in a timely manner; failure to create and/or implement guidelines that must be followed to remove inmates from existing suicide precautions; failure to create, implement and/or ensure staff follow policies; failure to adequately train and supervise employees; and failure to promulgate appropriate policies and procedures.  (*Id.* at ¶ 54.)

Plaintiffs assert two claims against Lizarraga under 42 U.S.C. §1983: (1) deliberate indifference to Decedent's serious medical needs, health, and safety under 42 U.S.C. §1983 (First

4

Cause of Action); and (2) supervisory liability based on customs, practices or policies (Second Cause of Action).  (*Id.* at ¶¶ 45–55.)  Defendants seek to dismiss the First Cause of Action on the basis of qualified immunity and failure to state a claim upon which relief may be granted and challenge the Second Cause of Action on the basis of qualified immunity.

     B.   <u>Defendants Dunne, Ponder, Suskauer, Heatley, and Smiley's Motion for Judgment on the Pleadings</u>

Dunne, Ponder, Suskauer, Newman, Heatley, and Smiley seek judgement in their favor on specified causes of action against them.  (ECF No. 34.)

Plaintiffs allege that Dunne and Ponder were deliberately indifferent to Decedent's serious medical/mental health needs because they participated in the development of the September 9, 2014 mental health treatment plan which they knew was "woefully inadequate."  (ECF No. 27 ¶¶ 34, 38, 43.)  Plaintiffs also assert that Dunne should have obtained but failed to obtain a psychiatrist's participation and/or approval of Decedent's mental health treatment plan.  (*Id.* at ¶ 37.)

Plaintiffs allege two claims against Dunne: (1) deliberate indifference to Decedent's serious medical needs, health, and safety under 42 U.S.C. §1983 (First Cause of Action); and (2) wrongful death under Cal. Code Civ. Proc. §337.60 et seq. (Third Cause of Action).  (*Id.* at ¶¶ 45–51, 56–64.)  Of these, Defendants seek judgment in favor of Dunne on the First Cause of Action asserting qualified immunity.  (ECF No. 34-1 at 12–15.)  They do not seek judgement regarding the Third Cause of Action.  (*Id.*)

Plaintiffs allege three claims against Ponder: (1) deliberate indifference to Decedent's serious medical needs, health, and safety under 42 U.S.C. §1983 (First Cause of Action); (2) wrongful death under Cal. Code Civ. Proc. §337.60 et seq. (Third Cause of Action); and (3) failure to supervise, investigate, and discipline under 42 U.S.C. §1983 (Fourth Cause of Action). (ECF No. 27 at ¶¶ 45–51, 56–68.)  Of these, Defendants seek judgement in favor of Ponder on the First and Fourth Causes of Action asserting qualified immunity and failure to state a claim upon which relief can be granted.  (ECF No. 34-1 at 12–19, 21–24.)  They do not seek judgment regarding the Third Cause of Action.  (*Id.*)

Plaintiffs allege that Newman was responsible for supervising Dunne but failed to competently do so.  (ECF No. 27 at ¶ 35.)  They assert three claims against Newman: (1) deliberate indifference to Decedent's serious medical needs, health, and safety under 42 U.S.C. §1983 (First Cause of Action); (2) wrongful death under Cal. Code Civ. Proc. §337.60 et seq. (Third Cause of Action); and (3) failure to supervise, investigate, and discipline employee conduct under 42 U.S.C. §1983 (Fourth Cause of Action).  (*Id.* at ¶¶ 45–51, 56–68.)  Of these, Defendants seek judgment in favor of Newman on the First and Fourth Cause of Action asserting qualified immunity and failure to state a claim upon which relief can be granted.  (ECF No. 34-1 at 12–19, 21–24.)  They do not seek Judgment regarding the Third Cause of Action.  (*Id.*)

Plaintiffs allege that Suskauer, as the psychiatrist who prescribed Decedent's psychotropic medications, had a duty to review the September 9, 2014 mental health treatment plan for Decedent, who was under his care, but negligently failed to do so.  (ECF No. 27 at ¶ 37.)  Plaintiffs also generally allege that Suskauer "failed to adequately supervise, investigate, and discipline employee conduct."  (*Id.* at ¶ 66.)  Plaintiffs present three claims against Suskauer: (1) deliberate indifference to Decedent's serious medical needs, health, and safety under 42 U.S.C. §1983 (First Cause of Action); (2) wrongful death/negligence under Cal. Code Civ. Proc. §337.60 et seq. (Third Cause of Action); and (3) failure to supervise, investigate, and discipline under 42 U.S.C. §1983 (Fourth Cause of Action).  (*Id.* at ¶¶ 45–51, 56–68.)  Of these, Defendants seek judgment in favor of Suskauer on the First and Fourth Cause of Action asserting qualified immunity and failure to state a claim upon which relief can be granted.  (ECF No. 34-1 at 12–19, 21–24.)  They do not seek judgment regarding the Third Cause of Action.  (*Id.*)

Finally, Plaintiffs allege that Heatley, as CME, was responsible for overseeing the examination, diagnoses, prescriptions, and treatment of all inmate patients at MCSP.  (ECF No. 27 at ¶ 12.)  Plaintiffs also allege that Smiley, as CEO, was the highest-ranking health care authority and responsible for all aspects of delivering health care at MCSP to ensure adequate medical and mental health care for all inmates at MCSP.  (*Id.* at ¶ 12.)  As detailed *supra*, Plaintiffs allege an "ongoing pattern of deliberate indifference" by Heatley and Smiley (along with Warden Lizarraga) for failure to ensure implementation of treatment plans, adequately train

1   staff, and implement policies and procedures to attend to inmates with risk of suicide.  (*Id.* at ¶

2   54.)

3        Plaintiffs assert two claims against Heatley and Smiley under 42 U.S.C. §1983: (1)

4   deliberate indifference to Decedent's serious medical needs, health, and safety (First Cause of

5   Action); and (2) supervisory liability based on customs, practices, or policies (Second Cause of

6   Action.)  (*Id.* at ¶¶ 45–55.)  Defendants seek judgment in favor of Heatley and Smiley on the First

7   and Second Causes of Action asserting qualified immunity and failure to state a claim upon which

8   relief can be granted.  (ECF No. 34-1 at 12–21.)  They do not seek judgment regarding the

9   remainder of the causes of action.

10       **II.     STANDARD OF LAW**

11            A. Motion to Dismiss

12       A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

13   12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

14   2001).  Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the

15   claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of

16   what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S.

17   544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  In considering a motion to

18   dismiss, all allegations of material fact must be accepted as true and construed in the light most

19   favorable to the plaintiff.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–338 (9th Cir. 1996)

20   (citations omitted).

21       A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed

22   factual allegations.  However, "a plaintiff's obligation to provide the 'grounds' of his

23   'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

24   the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alterations in original)

25   (citation omitted).  A court is not required to accept as true a "legal conclusion couched as a

26   factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "Factual

27   allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550

28   U.S. at 555 (citing Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §

1216 (3d ed. 2004) (stating, "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).  Ultimately, a court may not dismiss a complaint in which the plaintiffs have alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  While the plausibility requirement "is not akin to a 'probability requirement' but [rather demands] more than a sheer possibility that a defendant has acted unlawfully[,] . . . [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (*Id.*)  It is inappropriate to assume that the plaintiffs "can prove facts that [they have] not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

If a complaint fails to state a plausible claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile).  "Although a district court 'should freely give leave [to amend] when justice so requires,' Fed.R.Civ.P. 15(a)(2), the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (alterations in original) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### B.  Motion for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."  A motion for judgment on the pleadings pursuant to Rule 12(c) challenges the legal sufficiency of the opposing party's pleadings. *E.g. Westlands Water Dist. v. Bureau of Reclamation*, 805 F. Supp. 1503, 1506

(E.D. Cal. 1992). A Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim and, therefore, the same legal standard applies. *Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011); *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). A motion for judgment on the pleadings should only be granted if, accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party "clearly establishes that no material issue of fact remains to be resolved and that he [or she] is entitled to judgment as a matter of law." *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984) (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368 (1969)); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

In reviewing a motion brought under Rule 12(c), the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Judgment on the pleadings is appropriate when, taking everything in the pleadings as true, the moving party is entitled to judgment as a matter of law. *Ventress v. Japan Airlines*, 486 F.3d 1111, 1114 (9th Cir. 2007); *Honey v. Distelrath*, 195 F.3d 531, 532 (9th Cir. 1999).

Courts have discretion to grant a motion for judgment on the pleadings with leave to amend or dismiss the action instead of entering of judgment. *Lonberg v. City of Riverside*, 300 F.Supp.2d 942, 945 (C.D. Cal. 2004); *see also Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979), *disapproved on another ground in Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528 (1985); *Lawton v. Cavalry Investments LLC*, 2013 WL 3929707, at *1 (C.D. Cal. 2013); *Kennedy v. Kings Mosquito Abatement Dist.*, 2013 WL 1129202, at *3 (E.D. Cal. 2013); *Carmen v. San Francisco Unified School Dist.*, 982 F.Supp. 1396, 1401 (N.D. Cal. 1997).

**III.   ANALYSIS**

Defendants' motion to dismiss (ECF No. 33) claims against Kernan and Lizarraga, and Defendants' motion for judgment on the pleadings (ECF No. 34) to dismiss claims against Dunne, Ponder, Suskauer, Newman, Heatley, and Smiley are addressed in turn by the Court.

///

1    A.  <u>Motion to Dismiss</u>

2    Defendants move to dismiss the First Cause of Action against Kernan and Lizarraga for

3    failure to state a claim under Rule 12(b)(6).  Plaintiffs' First Cause of Action alleges that Kernan

4    and Lizarraga were deliberately indifferent to Decedent's serious medical needs, health, and

5    safety in violation of the Eighth Amendment.  (ECF No. 27 ¶¶ 45–51.)  Defendants also move to

6    dismiss the Second Cause of Action for Supervisory Liability as asserted against Lizarraga and

7    the Third Cause of Action against Kernan for wrongful death based on negligence and

8    malpractice under California Code of Civ. Pro. §337.60 et. seq.  (ECF No. 33-1.)

9    1.  *First Cause of Action – Deliberate Indifference to Decedent's Serious Medical*

10   *Needs, Health, and Safety*

11   As an initial matter, Plaintiffs do not oppose Lizarraga's motion to dismiss the First Cause

12   of Action.  (ECF No. 35 at 1.)  Therefore, the First Cause of Action as to Lizarraga is

13   DISMISSED with leave to amend.  In order for the Court to determine if the First Cause of

14   Action should be dismissed as to Kernan, it must analyze first whether the facts pleaded are

15   sufficient to allege deliberate indifference against her, and second whether Kernan is entitled to

16   qualified immunity.

17   **a.  Deliberate Indifference**

18   While prison inmates do have a constitutional right to medical care, liability attaches to

19   prison authorities only if the medical care afforded, or lack thereof, is "deliberately indifferent" to

20   an inmate's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104(1976); *Hutchinson v.*

21   *United States*, 838 F.2d 390, 394 (9th Cir. 1988).  A plaintiff must first establish a "serious

22   medical need by demonstrating that [the] failure to treat [his] condition could result in further

23   significant injury or the unnecessary and wanton infliction of pain."  *Jett v. Penner*, 439 F.3d

24   1091, 1096 (9th Cir. 2006).  Second, the plaintiff must show that the defendant's response to the

25   medical need was deliberately indifferent.  (*Id.*)

26   "Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060

27   (9th Cir. 2004).  "If a prison official should have been aware of the risk, but was not, then the

28   official has not violated the Eighth Amendment, no matter how severe the risk."  (*Id.*)  Deliberate

indifference can be shown when "prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Jett*, 439 F.3d at 1096.  But "[m]ere indifference, negligence, or medical malpractice will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).  The standard applied in the Ninth Circuit is even higher than gross negligence — deliberate indifference requires a culpable mental state.  *Green v. County of Sacramento*, No. 2:13-CV-00949-TLN-KJN, 2016 WL 374561 at *12 (E.D. Cal., Feb. 1, 2016), (citing *L.W. v. Grubbs*, 92 F.3d 894, 898–900 (9th Cir.1996)).  The state actor must "recognize[ ][an] unreasonable risk and actually intend[ ] to expose the plaintiff to such risks without regard to the consequences to the plaintiff."  *Id.* at 899.  In other words, the defendant "knows that something is going to happen but ignores the risk and exposes [the plaintiff] to it."  *Id.* at 900.  The deliberate-indifference inquiry should go to the jury if any rational factfinder could find this requisite mental state.  *Id.*

Defendants argue the SAC alleges no facts demonstrating Kernan was actually aware of a substantial risk of serious harm to Decedent and that she disregarded that risk.  (ECF No. 33-1 at 16.)  They posit that it is conclusory for Plaintiffs to state that Kernan, along with other members of the care team, approved Decedent's inadequate treatment plan despite knowing he presented a risk of suicide.  (*Id.*)  As such, they argue Plaintiffs have not met the "extraordinarily high" standard for deliberate indifference.  The Court disagrees.

The Court finds Plaintiffs sufficiently pleaded that an adequate treatment plan would have included input or approval by a psychiatrist given Decedent was taking prescribed psychotropic medication and "the role his medication was to play in his treatment" should have been taken into account.  (ECF No. 27 ¶ 36.)  Plaintiffs also sufficiently pleaded that "[a]n adequate mental health treatment plan would have included, at a minimum, suicide precautions preventing his access to bedding that was not suicide resistant."  (*Id.* at ¶ 39.)  Plaintiffs contend there should have been a plan for medication compliance along with participation of a psychiatrist or physician.  (*Id.* at ¶ 40.)  Plaintiffs also satisfactorily assert that these missing elements directly and proximately led to Decedent's death.  (*Id.* at ¶ 43.)

Plaintiffs allege in the SAC that Kernan, as a Correctional Counselor at MCSP and a member of Decedent's interdisciplinary treatment team, "knew or should have known" that the individualized mental health treatment plan for Decedent was "woefully inadequate." (ECF No. 27 ¶ 38.) Plaintiffs claim Decedent's interdisciplinary treatment team was responsible for developing his individualized treatment plan. (*Id.* at ¶ 34.) In support of the assertion that Kernan "knew or should have known" of Decedent's suicide risks, the SAC states that Decedent's "long documented history of mental illness, including being diagnosed with severe depression and being bi-polar" were well known to MCSP correctional and medical and mental health staff. (*Id.* at ¶ 22.) Defendants point out that Plaintiffs have not alleged any Defendant was present on the day of Decedent's suicide nor are any alleged to have had any personal interaction with Decedent close to his time of death. (ECF No. 33-1 at 15.) Defendants further argue that in alleging Kernan "knew or should have known" the treatment plan was inadequate, Plaintiffs in essence concede Kernan was not necessarily deliberately indifferent, but possibly just negligent. (*Id.* at 17.) Plaintiffs respond that they sufficiently allege Kernan had actual knowledge as to the inadequacy of the treatment plan as a member of the decedent's treatment team who knew Decedent's risk factors for suicide. (ECF No. 35 at 4–5.)

Though it is not stated in the SAC whether Kernan specifically knew Decedent had not taken his medication for three days prior to his death, based on the pleadings, a rational factfinder could infer that as a member of Decedent's care team, Kernan knew Decedent was at risk for suicide, and that she "ignore[d] the risk and exposed" Decedent to it by not taking steps to prevent Decedent's suicide in developing his treatment plan. *Grubbs*, 92 F.3d at 900. The Court therefore finds Plaintiffs have pleaded sufficient facts to state a claim of deliberate indifference as to Kernan.

### b.  Qualified Immunity

Defendants also argue Plaintiffs' §1983 claims are based on the failure to implement adequate suicide prevention policies and protocols, and as such, should be dismissed because Defendants are entitled to qualified immunity. (ECF No. 33-1 at 12–20.)

///

Qualified immunity protects government officers from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity questions are to be resolved at the "earliest possible stage in litigation" because qualified immunity is "an immunity from suit rather than a mere defense to liability." *Pearson*, 555 U.S. 231–2; *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

In determining qualified immunity, courts must ask: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right, *Saucier v. Katz*, 533 U.S. 194, 201 (2001); and (2) whether the right was "clearly established" at the time of the alleged misconduct. *Pearson*, 555 U.S. at 223–25. The Court may address either prong first. *Saucier,* 533 U.S. at 201. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . and serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." (*Id.*) "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (citation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Defendants argue the alleged constitutional right that is the basis for Plaintiffs' constitutional claims is the right to adequate suicide prevention policies and protocols. (ECF No. 33-1 at 14.) According to Defendants, it was not "clearly established" in 2014 — the time of the alleged violation and Decedent's death — that government actors had a duty to implement suicide prevention policies and protocols to the degree specified by Plaintiffs in the SAC. (*Id.*) Defendants rely on a Supreme Court case, *Taylor v. Barkes*, 135 S. Ct. 2042 (2015), in which the Court concluded that "no decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols." *Id.* The Court held defendants were entitled to

13

1  qualified immunity because such a right was not clearly established at least up to the decision in

2  *Taylor*. *Id.* at 2043–45.  Defendants argue that since Decedent's death occurred in November of

3  2014, the holding in *Taylor* should apply.  (ECF No. 33-1 at 15.)

4      Plaintiffs respond that the alleged constitutional right at issue is the right to be free from

5  deliberate indifference to an inmate's serious risk of suicide, which was clearly established at the

6  time of decedent's death.  They point to *NeSmith v. County of San Diego*, No. 15CV629 JLS

7  (JMA), 2016 WL 4515857 at *6 (S.D. Cal. 2016), which draws a distinction between "an

8  individual being deliberately indifferent to the suicidal ideations of a particular inmate and a

9  government entity acting with deliberate indifference toward potential inmate suicides on a policy

10  level."  *Id*.

11     Plaintiffs also cite to several cases in which the acts or omissions of prison staff

12  constituted deliberate indifference where staff members knew of and disregarded an excessive

13  risk to an inmate's health (citing to *Farmer v. Brennan*, 511 U.S. 825 (1994); *Estelle v. Gamble*,

14  429 U.S. 97 (1976)), as well as cases that acknowledged a clearly established constitutional right

15  to mental health treatment, including suicide prevention, while in custody (citing to *Van Orden v.*

16  *Downs*, 609 F. App'x 474, 475 (9th Cir. 2015); *Clouthier v. County of Contra Costa*, 591 F.3d

17  1232, 1245 (9th Cir. 2010)).  (ECF No. 35 at 2.)  Plaintiffs argue that the "clearly established"

18  prong of the *Saucier* test is thus met, and all that is left to decide is whether the particular

19  defendant's conduct violated that right.  The Court agrees that there exists a clearly established

20  right to be free from deliberate indifference to serious mental health needs, including risk of

21  suicide.  And as set forth above, Plaintiffs have sufficiently pleaded facts demonstrating that

22  Kernan violated this right given her role on Decedent's mental health treatment team and

23  knowledge of Decedent's risk of suicide.

24     Defendants acknowledge the distinction set forth in *NeSmith* and concede that *Taylor*

25  speaks to a "broader duty for government entities to implement a suicide prevention policy that

26  must meet certain unspecified standards," as opposed to "government actors" acting with

27  deliberate indifference to a particular inmate's suicidal ideations.  (ECF No. 33-1 at 15 citing

28  *NeSmith* at *7.)  However, they assert that T*aylor* is the proper authority here because "none of

14

1  the named Defendants is alleged to have been present on the day of the Decedent's suicide" nor

2  did any Defendant have personal interaction with Decedent for weeks.  (ECF No. 33-1 at 15.)  As

3  such, they assert this is not a case as described in *NeSmith* in which a particular defendant knew

4  of an imminent risk of suicide and disregarded that risk in a show of deliberate indifference.  (*Id.*)

5           The Court finds Defendants' reasoning unpersuasive because it seeks to paint all named

6  Defendants in the same broad stroke rather than have the Court consider each individuals' actions

7  or inactions as detailed in the pleadings.  But the Court must consider the facts as they are

8  asserted against each Defendant in order to determine whether the claims asserted pertain to a

9  failure to implement suicide prevention protocols at a "policy level" or deliberate indifference to

10  the Decedent's health, medical needs, or health and safety by individual government actors.

11  *Nesmith*, 2016 WL 4515857 at *6.

12          Here, the allegations against Kernan, given her participation on Decedent's

13  interdisciplinary care team and involvement in the development of Decedent's individualized

14  mental health treatment plan, are sufficient to allege deliberate indifference to Decedent's health,

15  medical needs, or health and safety by an individual government actor.  The relevant

16  constitutional right – to be free of deliberate indifference to serious mental health needs, including

17  risk of suicide – was clearly established at the time of Decedent's death.  As such, Kernan is not

18  entitled to qualified immunity at this stage.  Consequently, Defendants' motion to dismiss the

19  First Cause of Action as to Kernan is DENIED.

20          *2.  Second Cause of Action – Supervisory Liability based on Customs, Practices,*

21              *or Policies*

22          Plaintiffs allege the acts and/or omissions of Defendants in being deliberately indifferent

23  to Decedent's serious medical needs, health, and safety were the direct and proximate result of

24  customs, practices, or policies, or lack thereof, of Warden Lizarraga, CEO Smiley, and CME

25  Heatley.  (ECF No. 27 at ¶¶ 53–54.)  The Court previously found that Plaintiffs made sufficient

26  pleadings to allege supervisory liability based on customs, practices, or policies.  (ECF No. 21).

27  Defendants now seek dismissal of this cause of action based on qualified immunity.  (ECF No.

28  33-1 at 12–16.)

Plaintiff's allegations against Lizarraga, along with Heatley and Smiley include: a failure to ensure implementation of appropriate mental health and psychiatric treatment plans; failure to act upon symptoms and reports of suicidal impulses; failure to provide appropriate staffing and training at MCSP for providing inmates with adequate treatment; failure to implement a policy to ensure staff timely contact and summon emergency mental health and/or psychiatric treatment; failure to create and/or implement guidelines that must be followed to remove inmates from existing suicide precautions; failure to create, implement and/or ensure that staff follow policies; failure to adequately train and supervise employees; and failure to promulgate appropriate policies and procedures to prevent the constitutional violations alleged.  (ECF No. 27 at ¶ 54.)  As Defendants point out, the claims asserted by Plaintiffs against Lizarraga are based on his failure to ensure "the proper implementation of adequate suicide prevention protocols." *Taylor*, 135 S. Ct. at 2044.  As the Supreme Court noted in *Taylor*, "[n]o decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols." *Id.*  Consequently, Plaintiffs have not established a clearly established right, and therefore, Lizarraga is entitled to qualified immunity.  Under the qualified immunity analysis, which differs from the standards the Court analyzed in its previous order denying the motion to dismiss this cause of action (ECF No. 21), Defendants' Motion to Dismiss this cause of action as to Lizarraga is GRANTED with prejudice.

> *3.  Third Cause of Action – Wrongful death: Negligence / Malpractice under Cal. Code Civ. Proc. §377.60 et. seq.*

Lastly, Defendants move to dismiss the Third Cause of Action as to Kernan.  Plaintiffs do not oppose the dismissal of Kernan from the Third Cause of Action.  (ECF No. 35 at 1.) Therefore, the Court GRANTS the motion to dismiss the Third Cause of Action against Kernan with leave to amend.

### B.  Motion for Judgment on the Pleadings

Dunne, Ponder, Newman, Suskauer, Heatley, and Smiley move for judgment on the pleadings with regard to the following: (1) the First Cause of Action against Dunne, Ponder, Suskauer, Newman, Heatley, and Smiley on the basis of qualified immunity and for failure to

1  state a claim as to Suskauer, Newman, Heatley, and Smiley; (2) the Second Cause of Action

2  against Heatley and Smiley on the basis of qualified immunity and failure to state a claim; and (3)

3  the Fourth Cause of Action against Ponder, Suskauer, and Newman on the basis of qualified

4  immunity and failure to state a claim.  (ECF No. 34-1 at 8.)  Plaintiff does not oppose the motion

5  as it is "directed to Defendants Heatley and Smiley in the first cause of action and as it is directed

6  to Suskauer in the fourth cause of action."  (ECF No 36 at 1.)

7            1.  *First Cause of Action – Deliberate Indifference to Decedent's Serious Medical*

8               *Needs, Health, and Safety*

9       In similar fashion to the argument supporting qualified immunity for Kernan and

10  Lizarraga, Defendants argue that Dunne, Ponder, Suskauer, Newman, Heatley, and Smiley are

11  entitled to qualified immunity because the duty to implement adequate suicide prevention policies

12  or protocols was not a clearly established constitutional right at the time of Decedent's death per

13  *Taylor*, 135 S. Ct. 2042 (2015).  (ECF No. 34-1 at 12.)  As the Court discussed *supra*, however,

14  where individual government actors' actions or omissions are at issue, the Court finds, pursuant

15  to *NeSmith*, No. 15CV629 JLS (JMA), 2016 WL 4515857, at *6 (S.D. Cal. 2016) that the right to

16  be free from deliberate indifference to serious medical needs, including risk of suicide, was a

17  clearly established right at the time of alleged infractions by Defendants.  Therefore, in order to

18  determine if each Defendant is entitled to qualified immunity, the Court must turn to the second

19  prong of the qualified immunity test, namely, whether it is sufficiently alleged that each

20  individual violated Decedent's clearly established right.  This requires the Court to examine the

21  facts alleged as to each Defendant.

22            a.  <u>Defendant Dunne</u>

23       Defendants do not make particularized arguments in their motion for why Dunne's actions

24  or inactions do not meet the "extremely high" deliberate indifference standard.  The Court makes

25  its assessment based on the face of the pleadings in the SAC.

26       Plaintiffs allege Dunne was an unlicensed trainee mental health clinician who served as

27  the primary clinician in charge of Decedent's treatment plan.  (ECF No. 27 at ¶ 6.)  Dunne

28  participated on Decedent's interdisciplinary treatment team, along with Kernan and Ponder.  (*Id.*

at ¶ 34.)  The treatment team allegedly developed an inadequate mental health treatment plan, failed to include required clinical team members, and failed to obtain necessary approvals from a psychiatrist.  (*Id.* at ¶ 40.)  Medical staff knew Decedent was depressed, bi-polar, and presented a low acute and high chronic risk of suicide.  (*Id.* at ¶ 22.)  Plaintiffs allege that as the primary clinician in charge of Decedent's treatment plan, Dunne should have obtained a psychiatrist's participation and/or approval but failed to do so.  (*Id.* at ¶ 37.)  Finally, Plaintiffs allege that the treatment team developed a "woefully inadequate" mental health treatment plan and as a member of that treatment team, Dunne was deliberately indifferent to Decedent's serious medical/mental health needs.  (Id at ¶¶ 34, 38, 43.)

The Court finds the SAC pleads sufficient facts, when taken as true, to establish that Decedent had serious medical needs and that Dunne knew of those needs.  A trier of fact could therefore find the requisite intent that Dunne's actions and omissions arising from her role on Decedent's care team were "deliberately indifferent" in violation of the Eighth Amendment.

Consequently, Dunne is not entitled to qualified immunity.  Defendants do not argue that the SAC otherwise fails to state a claim.  Defendants' motion for judgment on the pleadings as to the First Cause of Action against Dunne is DENIED.

b.  Defendant Ponder

Defendants also seek judgment in favor of Ponder on the First Cause of Action asserting qualified immunity.  (ECF No. 34-1 at 8.)

According to the SAC, Ponder was a Clinical Psychologist and mental health practitioner who was one of three participants on Decedent's interdisciplinary treatment team.  (ECF No. 27 at ¶ 9.)  Ponder, as part of the treatment team, developed Decedent's mental health treatment plan, which Plaintiffs claim, "failed to address his known mental health needs."  (*Id.* at ¶ 38.)  Plaintiffs assert that "[a]n adequate mental health treatment plan would have included, at a minimum, suicide precautions preventing access to bedding that was not suicide resistant."  (*Id.* at ¶ 39.)  Plaintiffs allege that Decedent's suicide resulted directly or substantially from the inadequate mental health treatment plan approved, in part, by Ponder.  (*Id.* at ¶ 43.)

///

1    The Court finds Plaintiffs have stated sufficient plausible factual allegations supporting

2    the claim that Ponder acted with deliberate indifference by failing to take actions to address

3    Decedent's risk of suicide despite knowing of this risk.  The Court therefore finds that Ponder is

4    not entitled to qualified immunity.   Defendants do not argue that Plaintiffs have otherwise failed

5    to state a claim against Ponder.  Therefore, Defendants' motion for judgment on the pleadings as

6    to the First Cause of Action against Ponder is DENIED.

7                                c.   Defendant Newman

8         Defendants next seek judgment in favor of Newman on the First Cause of Action asserting

9    qualified immunity and for failure to state a claim upon which relief can be granted.  (ECF No.

10   34-1 at 8.)

11        Newman was a staff psychologist working at MCSP.  (ECF No. 27 at ¶ 8.)  Plaintiffs

12   allege that Newman was responsible for supervising Dunne in the preparation or execution of

13   Decedent's mental health plan but failed to do so despite knowing such supervision was crucial

14   and legally required.  (*Id.* at ¶ 35.)  Defendants move for judgement in favor of Newman

15   regarding this cause of action, arguing that these allegations support the supervisory liability

16   claim in the Fourth Cause of Action but do not support the deliberate indifference claim in the

17   First Cause of Action.  (ECF No. 34-1 at 18.)  Plaintiffs oppose arguing that as a staff

18   psychologist, Newman knowingly allowed an unlicensed and unqualified individual to provide

19   treatment to Decedent and was therefore deliberately indifferent.  (ECF No. 36 at 5.)

20        The Court agrees with Defendants that Plaintiffs have not alleged facts demonstrating

21   Newman's deliberate indifference to Decedent's serious medical needs.  The SAC is devoid of

22   allegations that Newman was even aware of medical or suicide risks to the Decedent, much less

23   that he intentionally ignored those risks.  The only allegations present are that he failed to

24   supervise Dunne.  Therefore, based on the facts alleged, Newman is entitled to qualified

25   immunity.  If a complaint fails to state a plausible claim, "a district court should grant leave to amend

26   even if no request to amend the pleading was made, unless it determines that the pleading could not

27   possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1127 (citations omitted).

28   Defendants' motion for judgment on the pleadings as to the First Cause of Action against

Newman is GRANTED with leave to amend.

d.  <u>Defendant Suskauer</u>

Defendants move for judgment on the pleadings on the First Cause of Action against Suskauer asserting qualified immunity and for failure to state a claim upon which relief can be granted.  (ECF No. 34-1 at 8.)

Suskauer was a CDCR staff psychiatrist and mental health practitioner working at MCSP. (ECF No. 27 at ¶ 10.)  Plaintiffs allege that Suskauer, as the prescriber of Decedent's psychotropic medication, had a duty to review the September 9, 2014 mental health treatment plan for Decedent, who was under his care, but negligently failed to do so.  (*Id.* at ¶ 37.) Plaintiffs also claim that a psychiatrist or other physician's participation or approval was "notably absent" from the Decedent's mental health treatment plan, which meant "there could be no and there was no proper assessment of the role his medication was to play in his treatment" and "no plan, or ability to implement a plan, to appropriately respond to a further increase in his acute suicide risk created by his refusal to take medications."  (*Id.* at ¶ 36.)

Defendants argue that the pleadings do not allege facts demonstrating that Suskauer was aware of a substantial risk of serious harm to Decedent or that he disregarded that risk.  (ECF No. 34-1 at 17.)  Rather than deliberate indifference, Defendants argue the pleadings support a negligence cause of action.  (*Id.* at 17–18.)

Plaintiffs' opposition argues that Suskauer is inferred to know about Decedent's depression, suicidal ideation, and history of suicide attempts, given he was the doctor who prescribed psychotropic medication.  (ECF No. 36 at 4.)

While the Court fails to see how Suskauer, as a psychiatrist, could have requisite control over the full range of suicide prevention actions that could have been taken, such as issuing tear resistant clothing and bedding or frequent observations by staff (ECF No. 27 at ¶ 27), Plaintiffs have nonetheless sufficiently stated a plausible deliberate indifference claim against Suskauer  for his alleged failure to review and approve Decedent's treatment plan (*id.* at ¶ 37), failure to consider how medication should fit into Decedent's treatment (*id.* at ¶ 36), and failure to implement a plan to respond to heightened risk of suicide when his patient refuses to take

1    prescribed psychotropic medication (*id.*).  Because the Court finds the allegations are specific to

2    Suskauer's individual conduct and not to implementation of suicide prevention policies at an

3    institutional level, *Taylor* does not apply.  Instead, the constitutional right to be free from

4    deliberate indifference to serious medical needs is clearly established and Plaintiffs have alleged

5    sufficient facts that Suskauer violated that right.  As such, Suskauer is not entitled to qualified

6    immunity.  Further, the facts discussed above are sufficient to state a claim for deliberate

7    indifference against Suskauer.  Therefore, Defendants' motion for judgment on the pleadings in

8    favor of Suskauer on this cause of action is DENIED.

9                              e.   Defendants Heatley and Smiley

10           Defendants argue that Heatley and Smiley are medical administrators and that Plaintiffs

11   have alleged no facts demonstrating these Defendants had actual knowledge of a serious risk to

12   Decedent's health and safety and disregarded that risk.  (ECF No. 34-1 at 19.)  Defendants argue

13   the SAC does not allege that either Defendant was aware of Decedent's mental health condition,

14   much less his risk of suicide.  (*Id.*)  Plaintiffs do not oppose Defendants' motion as it is directed

15   to Heatley and Smiley in the First Cause of Action.  (ECF No. 36-1.)  If a complaint fails to state a

16   plausible claim, "a district court should grant leave to amend even if no request to amend the pleading

17   was made, unless it determines that the pleading could not possibly be cured by the allegation of other

18   facts." *Lopez*, 203 F.3d at 1127 (citations omitted).  Therefore, Defendants' motion for judgement

19   on the pleadings on the First Cause of Action as to Heatley and Smiley is GRANTED with leave

20   to amend.

21           *2.   Second Cause of Action – Supervisory Liability based on Customs, Practices,*

22                 *or Policies*

23           Plaintiffs allege that the acts and/or omissions of Defendants in being deliberately

24   indifferent to Decedent's serious medical needs, health, and safety, were the direct and proximate

25   result of customs, practices, or policies, or lack thereof, of Warden Lizarraga, CEO Smiley and

26   CME Heatley.  (ECF No. 27 at ¶¶ 53–54.)  The Court has previously found that Plaintiffs

27   sufficiently alleged supervisory liability based on customs, practices, or policies.  (ECF No. 21).

28   Defendants now seek judgment in favor of Smiley and Heatley on this cause of action asserting

1    qualified immunity.  (ECF No. 34-1 at 14–15.)

2           As discussed *supra* with regard to Lizarraga for this same cause of action, the claims

3    asserted by Plaintiffs against Heatley and Smiley are based on their failure to ensure "the proper

4    implementation of adequate suicide prevention protocols," which was not a clearly established

5    right at the time of Decedent's death.  *Taylor*, 135 S. Ct. at 2044.  Consequently, Heatley and

6    Smiley are entitled to qualified immunity and Defendants' motion for judgment on the pleadings

7    as to the Second Cause of Action against these Defendants is GRANTED with prejudice.

8                    *3.   Fourth Cause of Action – Failure to Supervise, Investigate, and Discipline*

9           A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his

10   or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection

11   between the supervisor's wrongful conduct and the constitutional violation."  *Starr v. Baca*, 652

12   F.3d 1202, 1207 (9th Cir. 2011) (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).  "A

13   supervisor can be liable in his individual capacity for his own culpable action or inaction in the

14   training, supervision, or control of his subordinates; his acquiescence in the constitutional

15   deprivation; or for conduct that showed a reckless or callous indifference to the rights of others."

16   *Starr*, 652 F.3d at 1208 (citing *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).

17   A plaintiff is not required to allege that a supervisor was physically present when the injury

18   occurred.  *Starr*, 652 F.3d at 1205.

19                              i.   Defendant Ponder

20          Defendants seek judgement on the pleadings as to the Fourth Cause of Action against

21   Ponder on the basis of qualified immunity and for failure to state a claim upon which relief can be

22   granted.  (ECF No. 34-1 at 8.)

23          As discussed *supra*, Ponder is not entitled to qualified immunity based on his personal

24   involvement in the creation of the individualized treatment plan.  However, Defendants argue that

25   Plaintiffs' Fourth Cause of Action names Ponder on a failure to supervise, but that Plaintiffs have

26   not alleged any facts demonstrating whom Ponder failed to supervise, or how he failed to

27   supervise them.  (ECF No. 34-1 at 22.)  Defendants also assert that Plaintiffs fail to allege facts

28   demonstrating how such failure resulted in Decedent's suicide.  (*Id.*)  After thoroughly examining

                                              22

1    the SAC, the Court agrees with Defendants that the SAC fails to allege any action or inaction by

2    Ponder as a supervisor.  Indeed, the Fourth Cause of Action does not mention Ponder in any

3    capacity except to list him under the heading.  "A claim has facial plausibility when the plaintiff

4    pleads factual content that allows the court to draw the reasonable inference that the defendant is

5    liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  We do not find such facial plausibility

6    met here given the dearth of relevant facts.

7         Consequently, the motion for judgement on the pleadings as to the Fourth Cause of Action

8    against Ponder is GRANTED with leave to amend.

9                   ii.   Defendant Newman

10        Plaintiffs also allege under the Fourth Cause of Action that Newman failed to adequately

11   supervise, investigate, and discipline employee conduct.  (ECF No. 27 at ¶ 66.)  In particular, the

12   SAC alleges that Newman was responsible for supervising Dunne, the unlicensed trainee and

13   "primary clinician" on Decedent's treatment team but failed to competently do so.  (*Id.* at ¶ 30.)

14   Plaintiffs allege Newman failed to exercise any supervision over Dunne in the preparation or

15   execution of the Decedent's mental health treatment plan, even though Newman knew that such

16   supervision was critically and legally required.  (*Id.* at ¶ 35.)

17        In order for Newman to be liable under § 1983 as a supervisor she must have personally

18   been involved in the constitutional violation or there must be a sufficient causal connection

19   between Newman's alleged wrongful action and the constitutional deprivation.  As discussed

20   *supra*, the SAC does not allege facts indicating that Newman was personally involved in any

21   deliberate indifference to Decedent's risk of suicide.  While the SAC alleges that Newman had

22   some responsibility in supervising Dunne in her duties, it does not allege facts sufficient to meet

23   the required causal connection between Dunne's deliberate indifference to Decedent's medical

24   needs and Newman's action or inaction as a supervisor.  As such, Newman is entitled to qualified

25   immunity based on the facts alleged.  However, the Court does not find that amendment would be

26   futile.  Therefore, Defendants' motion for judgment on the pleadings as to the Fourth Cause of

27   Action against Newman is GRANTED with leave to amend.

28   ///

iii.  Defendant Suskauer

Finally, Defendants seek judgement on the pleadings as to the Fourth Cause of Action against Suskauer.  Plaintiffs explicitly do not oppose this motion.  (ECF No. 36 at 1.)  As such, Defendants' motion for judgment on the pleadings to dismiss Suskauer from this Cause of Action is GRANTED with leave to amend.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants Kernan and Lizarraga's Motion to Dismiss and GRANTS in part and DENIES in part Defendants Dunne, Ponder, Suskauer, Newman, Heatley, and Smiley's Motion for Judgment on the Pleadings, as follows:

(1) The Motion to Dismiss the First Cause of Action is DENIED as to Kernan and GRANTED with leave to amend as to Defendant Lizarraga;

(2) The Motion to Dismiss the Second Cause of Action against Defendant Lizarraga is GRANTED with prejudice;

(3) The Motion to Dismiss the Third Cause of Action against Defendant Kernan is GRANTED with leave to amend;

(4) The Motion for Judgement on the Pleadings as to the First Cause of Action against Defendants Dunne, Ponder, and Suskauer is DENIED; it is GRANTED with leave to amend as to Defendants Newman, Heatley, and Smiley;

(5) The Motion for Judgement on the Pleadings as to the Second Cause of Action against Defendants Heatley and Smiley is GRANTED with prejudice; and

(6) The Motion for Judgement on the Pleadings as to the Fourth Cause of action against Defendants Ponder, Newman, and Suskauer is GRANTED with leave to amend.

IT IS SO ORDERED.

Dated: February 27, 2020

Troy L. Nunley
United States District Judge

24